457 So.2d 646 (1984)
Norman JAECKLE
v.
DRESSER INDUSTRIES, INC.
No. 84-C-0629.
Supreme Court of Louisiana.
October 15, 1984.
David B. Allen, Samanie & Barnes, Houma, for plaintiff-applicant.
Robert M. Johnston, Johnston & Duplass, New Orleans, for defendant-respondent.
MARCUS, Justice.
Norman Jaeckle brought this suit against his former employer, Dresser Industries, Inc., to recover permanent total disability benefits under the Louisiana Worker's Compensation Law for a back injury which occurred during the course and scope of his employment. The trial judge rendered judgment in favor of Dresser, *647 based on findings that Jaeckle was not disabled on the date of trial and therefore was not due compensation beyond the date payment was terminated. The court of appeal affirmed with one judge dissenting.[1] On Jaeckle's application, we granted certiorari to review the correctness of that decision.[2]
The record reflects that Jaeckle was hired by Dresser in August of 1981 as a wire line operator. His duties included driving a truck and loading and unloading heavy machinery. On January 24, 1982, Jaeckle, age 28, was unloading a heavy object from a truck when he felt something pop in his back. The next day, after experiencing severe back and neck pain while driving, he reported the incident to his supervisor.
Jaeckle was sent to the company doctor, Dr. Richard Warren, who took x-rays and prescribed medication and rest. One week later, Dr. Warren referred Jaeckle to an orthopedic surgeon, Dr. Chris Cenac. Dr. Cenac took x-rays, prescribed medication, and advised that Jaeckle could return to light duty work in ten days. Jaeckle testified that after ten days he was still in great pain and therefore did not return to work. He consulted Dr. Michael Flynn, a chiropractor, who treated him for about one month. Dr. Flynn initially recommended that Jaeckle rest for one week and then return to work on light duty. Jaeckle went on light duty from late February until March 20, 1982. During this time, he was required to drive and at times to lift heavy machinery. Because this work was quite painful, in late March he consulted Dr. Gary Guidry, an orthopedic surgeon. Dr. Guidry or his associates saw Jaeckle eight times between March 22, 1982 and July 13, 1982. At Dresser's request, Jaeckle was examined by Dr. James Williams, an orthopedic surgeon, on June 1, 1982 and again in October of 1982.
Dresser paid Jaeckle wages until March 22, 1982, when he ceased to work and began to receive compensation benefits. Compensation was terminated June 27, 1982, after Dr. Williams advised Dresser that in his opinion Jaeckle was not disabled. Jaeckle testified that he moved to Buffalo, New York, in July of 1982 to live with his parents because he and his pregnant wife had no means of support after compensation was terminated. Between the move to New York and his return to Louisiana for trial in October of 1982 (some three months), Jaeckle did not consult a physician for his back.
Dr. Guidry's testimony[3] reflects that during his orthopedic examination of Jaeckle in late March, he found indications of involuntary muscle spasm on either side of the spinal column. He stated that the spasms represented an objective finding of muscle reaction to pain or injury. He prescribed medication and directed Jaeckle to cease working and to begin physical therapy. To diagnose the injury, Dr. Guidry ordered a CAT scan of Jaeckle's lower back, an electromyelographic study and a lumbar myelogram.
The CAT scan, conducted by Dr. Wayne Martin, indicated a central protruding disc at L5-S1 that slightly indented the dural sac. The electromyelographic study was performed by Dr. Daniel Trahant who observed pathology at the same location. The lumbar myelogram was abnormal, suggesting a herniated invertebral disc at L5. Based upon these objective diagnostic studies, Dr. Guidry concluded that Jaeckle's subjective complaints of back pain were caused by a herniated disc. He advised Jaeckle not to return to his former job and discussed the possibility of surgery to relieve the pain. Jaeckle elected to pursue a conservative course of treatment which included therapy and rest. Dr. Guidry examined Jaeckle again on the day before trial. Jaeckle complained that he had been experiencing increased pain. Dr. Guidry reconfirmed his previous diagnosis and was of *648 the opinion that as of that date Jaeckle could not safely return to his former employment.
Dr. Williams testified that during his June 1 examination, Jaeckle complained that he had been experiencing pain in his low back and both legs, as well as occasional numbness in his right foot. Dr. Williams stated that Jaeckle showed no signs of back pain during his orthopedic examination other than discomfort at hand pressure applied over the spinous processes of the lumbar vertebrae. The doctor disagreed with Dr. Guidry's interpretation of the diagnostic tests. He opined that the lumbar myelogram showed no evidence of a ruptured disc. While conceding that the CAT scan indicated a disc protrusion, Dr. Williams stated that this protrusion did not appear to impinge on the nerve roots and was therefore not clinically significant. He concluded that Jaeckle's subjective complaints were not consistent with a diagnosis of a herniated disc and that there was no objective evidence of any injury or disability. After re-examination of Jaeckle in October, Dr. Williams' opinion remained the same.
The record indicates that Jaeckle was involved in an altercation with his brother-in-law about two weeks after the work-related accident. He testified that he fell during the fight and cut his upper back, but did not feel that the fall had injured his lower back. Two days after this fight, Jaeckle reported to an emergency room, seeking treatment for the cut. At trial, conflicting evidence was presented as to whether or not Jaeckle had reported the previous work-related injury to the emergency room staff.
In order to recover benefits under the Louisiana Worker's Compensation Law, an employee must establish that he received a personal injury by accident arising out of and in the course of his employment. La. R.S. 23:1031. It is not disputed that Jaeckle suffered a work-related accident within the meaning of our worker's compensation law. Hence, the sole issues presented are whether or not Jaeckle was disabled as a result of the accident and, if so, the amount of compensation to which he is entitled.
A claimant in a worker's compensation proceeding bears the burden of proving to a legal certainty and by a reasonable preponderance of the evidence the nature and extent of his disability. Culp v. Belden Corp., 416 So.2d 1311 (La.App. 3d Cir. 1982), aff'd, 432 So.2d 847 (La.1983); Daney v. Argonaut Ins. Co., 421 So.2d 331 (La.App. 1st Cir.1982). The diagnosis and opinion of the treating physician are entitled to more weight than those of doctors examining the plaintiff for consultation for litigation purposes only. Schouest v. J. Ray McDermott & Co., Inc., 411 So.2d 1042 (La.1982).
The trial judge, in finding that Jaeckle did not prove his disability, failed to give more weight to the opinion of Dr. Guidry as the treating physician than that of Dr. Williams. The judge stated, "[W]hen Mr. Jaeckle moved to New York, the status of Dr. Guidry as a treating physician in fact ceased." We disagree. Jaeckle sought out Dr. Guidry's services to obtain relief from his back pain. Dr. Guidry treated Jaeckle over a period of about three and a half months, during which time Jaeckle visited his office eight times. The doctor prescribed medicine and physical therapy in order to relieve Jaeckle's pain and ordered diagnostic tests in order to determine the cause of Jaeckle's continued discomfort. Jaeckle did not seek the advice of any other physician between his visit to Dr. Guidry in late July and his October examination. Under these circumstances, Dr. Guidry did not cease to be Jaeckle's treating physician.
A careful review of the record leads us to conclude that Jaeckle proved by a preponderance of the evidence that he was disabled as a result of the work-related accident. The results of the CAT scan, electromyelographic study and lumbar myelogram constitute objective evidence that Jaeckle sustained a herniated disc. The findings of these diagnostic tests substantiate Jaeckle's subjective complaints and support the conclusions of Dr. Guidry, whose opinion as the treating physician is entitled *649 to more weight than that of Dr. Williams. Jaeckle's failure to seek medical attention between his move to New York and his return to New Orleans is understandable in view of the fact that he had no source of income to pay a doctor and indeed was forced to rely on his parents for support.
Dresser attempted to establish that Jaeckle's fight with his brother-in-law two weeks after the work-related accident presented an intervening cause that should relieve Dresser of its compensation responsibility. The trial judge correctly found that Dresser did not meet its burden. From the record, we find insufficient proof that the altercation constituted an intervening cause.
In sum, we conclude that the trial judge was clearly wrong in finding that Jaeckle did not prove that he was disabled by a preponderance of the evidence. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Rather, we find that Jaeckle met his burden and is entitled to compensation benefits. As the court of appeal found no disability, it did not reach the issue of the amount of compensation to which he is entitled. We therefore consider it more appropriate to remand the case to that court for it to determine the amount of Jaeckle's recovery.

DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and the case is remanded to the court of appeal for further proceedings consistent with the views herein expressed.
DENNIS, J., concurs.
NOTES
[1] 447 So.2d 15 (La.App. 1st Cir.1984).
[2] 450 So.2d 356 (La.1984).
[3] The testimony of Drs. Guidry and Williams at trial was by deposition.